IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT C. CAMARA, | ) | CASE NO. 3:16CV756 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| JAMES HAVILAND, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **ORDER** |
| Respondent. | ) | |

This matter is before the undersigned pursuant to Local Rule 72.2. Before the Court is the Petition of Robert C. Camara ("Camara" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Camara is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Camara*, Lucas County Court of Common Pleas Case Nos. CR0200401890 and CR0200401972.

On August 15, 2016, Respondent filed a Motion to Dismiss the Petition as time-barred. (Doc. No. 5.) Petitioner filed a response on September 12, 2016 (Doc. No. 6), to which Respondent did not reply. For the following reasons, Respondent's Motion to Dismiss is DENIED WITHOUT PREJUDICE, subject to refiling as set forth in detail below.

**I. Procedural History**

**A.      Trial Court Proceedings**

In April 2004, in Case Number CR0200401890, a Lucas County Grand Jury charged Camara with three counts of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1)/(3), one

of which included a firearm specification (Counts One, Three, and Six); two counts of aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(1) (Counts Four and Five); one count of robbery in violation of Ohio Rev. Code § 2911.02(A)(2) (Count Two); one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) (Count Seven); and one count of receiving stolen property in violation of Ohio Rev. Code § 2913.51 (Count Eight). (Doc. No. 5-1, Exh. 1.) This indictment related to conduct allegedly occurring on April 17, 19, and 20, 2004.

Shortly thereafter, in May 2004, a Lucas County Grand Jury charged Camara in Case Number CR0200401972 with one count of robbery in violation of Ohio Rev. Code § 2911.02(A)(2), for conduct allegedly occurring on April 5, 2004. (Doc. No. 5-1, Exh. 2.)

Camara initially pled not guilty in both cases. (Doc. No. 5-1, Exhs. 10, 11.) On July 15, 2014, however, Camara pled guilty to the following charges in Case No. CR0200401890: "the offense of Robbery, count 2, in violation of R.C. 2911.02(A)(2), a felony of the 2nd degree, and Aggravated Burglary, count 5, in violation of R.C. 2911.11(A)(1), a felony of the 1st degree. . . [and] pursuant to *North Carolina v. Alford* to the offense of Aggravated Burglary, count 4, in violation of R.C. 2911.11(A)(1), a felony of the 1st degree." (Doc. No. 5-1, Exh. 10.) On the same date, in Case Number CR020041972, Camara pled guilty "pursuant to *North Carolina v. Alford* to the offense of Robbery, in violation of R.C. 2911.02(A)(2), a felony of the 2nd degree." (Doc. No. 5-1, Exh. 11.)

A sentencing hearing was conducted on August 2, 2004, at which time Camara was sentenced in Case Number CR0200401890 to a term of seven years in prison for Robbery as set forth in Count 2, nine years in prison for Aggravated Burglary as set forth in Count 4, and nine years

in prison for Aggravated Burglary as set forth in Count 5.[1] (Doc. No. 5-1, Exh. 3.) On that same date, Camara was sentenced in Case Number CR0200401972 to a term of five years in prison for Robbery as set forth in Count 1. (Doc. No. 5-1, Exh. 4.) The state trial court ordered the sentences in these cases be served consecutively to each other. (Doc. No. 5-1, Exhs. 3, 4.) In addition, both sentencing entries provided for an additional consecutive term of 892 days incarceration for a post-release control violation, as follows:

> The Court finds that in Marion County, Ohio, case no. 02-CR-204, the defendant has been convicted of Escape and Marion County, Ohio, case no. 02-CR-262, the defendant has been convicted of Aggravated Assault and sentenced to the Ohio Department of Rehabilitation and Correction. The Court further finds that after serving his stated prison term in Marion County, Ohio, case no. 02-CR-204 and case no. 02-CR-262 the defendant was released on Post Release Control. While under Post Release Control in Marion County, Ohio, case no. 02-CR-204 and case no. 02-CR-262, the defendant committed and has now been convicted of Robbery, a felony of the 2nd degree in Lucas County, Ohio Case no. CR2004-1972 and Robbery, a felony of the 2nd degree, Aggravated Burglary, a felony of the 1st degree, and Aggravated Burglary, a felony of the 1st degree, in Lucas County, Ohio, Case no. CR2004-1890. Pursuant to O.R.C. 2967.28(F)(4), the Court finds that the defendant is in violation of Post Release Control by committing the felonies in Lucas County, Ohio, case no. CR2004-1972 and case no. CR2004-1890 and therefore imposes a prison term of 892 days in prison for Marion County, Ohio, case no. 02-CR-204 and case no. 02-CR-262. The Court further finds that the prison term imposed for the violation of Post Release Control in Marion County, Ohio, case no. 02-CR-204 and case no. 02-CR-262 shall be served consecutively to the prison term imposed for the new felonies committed in Lucas County, Ohio, case no. CR2004-1972 and CR2004-1890.

(Doc. No. 5-1, Exhs. 3, 4.)

---

[1] The docket sheet for Case Number CR200401890 appears to reflect that a sentencing hearing was conducted on July 28, 2004, at which terms of incarceration were imposed on counts one, three, and seven. (Doc. No. 5-1, Exhs. 10, 11.) Respondent does not address this discrepancy or otherwise include any documents from the state court record relating to this apparent sentencing hearing. Nor does Respondent include the change of plea hearing transcript or the sentencing hearing transcript from August 2, 2004, which might shed light on the matter.

In both cases, the state trial court also entered on August 2, 2004 a "Notice Pursuant to R.C. 2929.19(B)(3)" advising Camara that "a term of post-release control after prison will be imposed following prison release for an F1 or F2 . . .; otherwise post-release control may be imposed.  For violating post release control conditions, the adult parole authority or parole board may impose a more restrictive or longer control sanction, including a nine month prison term for each violation, up to a maximum of 50% of the stated term originally imposed.  If the violation is a new felony, defendant may be returned to prison for the greater of one year or the time remaining on post-release control in addition to prison upon conviction of the new felony." (Doc. No. 5-1, Exhs. 3, 4.)  These "Notices" are signed by Camara and his defense attorney.  (*Id.*)

The docket reflects Camara did not appeal from these convictions and sentences.

**B.     First Post-Conviction Proceeding**

Nearly two years later, on June 15, 2006, Camara, *pro se*, filed a Petition to Vacate or Set Aside Sentence, in which he raised the following three grounds for relief:

I.     5th Amendment Violation is a Constitutional Right to Not Incriminate Myself.

Short statement of facts supporting the claim: Attorney coerced a guilty plea.

II.    6th Amendment Violation to a fair trial and effective assistance of counsel.

Short statement of facts supporting the claim: Attorney coerced a guilty plea in violation of code of professional responsibility "EC 7-13" and ethical rule violations "DR1-102(A)(5)" by pretrial prejudice of failing to investigate and preparing for a fair trial when witness testimony and co-defendant testimony never met the burden of proof requirements confirming substantial justice was not done.

III.   14th Amendment of atypical hardship is a violation of my constitution rights.

> <u>Short statement of facts supporting the claim</u>: Counsel's conduct undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result.

(Doc. No. 5-1, Exh. 5.)  On January 12, 2007, the state trial court denied the motion.[2]  (Doc. No. 5-1, Exh. 10.)  It does not appear that Camara sought appellate review.

**C.**  ***Nunc Pro Tunc* Sentencing Entries (2007-2012)**

On July 31, 2007, the state trial court issued a "Nunc Pro Tunc Judgment Entry" in Case No. CR0200401890.  (Doc. No. 5-1, Exh. 3 at Page ID# 113-114.)  This Entry states as follows:

> Nunc Pro-Tunc Judgment Entry correcting the sentencing entry to reflect the Defendant having been given notice of appellate rights under R.C. 2953.08 and post-release control notice under R.C. 2929.19(B)(3) and R.C. 2967.28.

(*Id.*)  Otherwise, the Judgment Entry is identical to the August 2, 2004 sentencing entry, with the exception that page 2 of the Entry specifically states that Camara was given "post release control notice under R.C. 2929.19(B)(3) and R.C. 2967.28."  (*Id.* at Page ID#114.)  The state trial court issued an identical "Nunc Pro Tunc Judgment Entry" in Case No. CR02002401972.  (Doc. No. 5-1, Exh. 4 at Page ID# 126-127.)

The state court docket reflects Nunc Pro Tunc Judgment Entries were also entered on June 18, 2012 and September 19, 2012 in Case No. CR0200401890.  (Doc. No. 5-1, Exh. 10.)  Respondent does not provide any explanation or discussion regarding these Judgment Entries, nor did he include them in the habeas record.

**D.  Motion to Vacate Judgment and/or Set Aside Sentence**

On March 27, 2014, Camara, *pro se*, filed a Motion to Vacate Judgment and/or Set Aside

---

[2] Respondent failed to include the state trial court's Order denying the motion in the habeas record before this Court.

5

Sentence in the state trial court. (Doc. No. 5-1, Exh. 6.) He asserted the following four grounds for relief:

    I.    The Defendant's indictments are fatally defective because they allege multiple, identical, and undifferentiated counts in violation of the Double Jeopardy and Due Process clauses of the Ohio and United States Constitutions.

    II.    The Defendant's term of post-release control for Case Numbers 02-CR-204 and 02-CR-262 was contrary to law, thus the 892 day term of imprisonment imposed for violation of said post-release control is void and must be vacated as its violates the Due Process Clauses of the Ohio and United States Constitutions.

    III.    The Defendant's judgment of conviction does not comply with Crim. R. 32(C), thus there is no final appealable order, in violation of the Due Process Clauses of the Ohio and United States Constitutions.

    IV.    The Defendant received ineffective assistance of counsel at trial, in violation of his Sixth and Fourteenth Amendment rights under the Constitution of the United States, as well as comparable provisions under the Ohio Constitution.

(*Id*.) The State filed a Memorandum in Opposition, which is not included in the habeas record before this Court.

On June 24, 2014, the state trial court issued a lengthy decision denying the motion as untimely filed and, alternatively, meritless and/or barred by *res judicata*. (Doc. No. 5-1, Exh. 7.)

Camara appealed to the Court of Appeals for the Sixth Appellate District of Ohio ("state appellate court"), raising the same four grounds for relief as set forth above.[3] *See State v. Camara*, 2015 WL 5511040 at *2 (Ohio App. 6th Dist. Sept. 18, 2015). On September 18, 2015, the state appellate court affirmed the denial of Camara's motion to vacate judgment and/or sentence. *Id*.

---

[3] Respondent did not include Camara's notice of appeal or appellate brief in the habeas record. However, Camara's assignments of error are recited in the state appellate court decision.

On October 20, 2015, Camara filed a notice of appeal to the Ohio Supreme Court. In his memorandum in support of jurisdiction, he raised the following three assignments of error:

I. The Defendant's indictments are fatally defective because they allege multiple, identical, and undifferentiated counts in violation of the Double Jeopardy and Due Process clauses of the Ohio and United States Constitutions.

II. The Defendant's term of post-release control for Case Numbers 02-CR-204 and 02-CR-262 was contrary to law, thus the 892 day term of imprisonment imposed for violation of said post-release control is void and must be vacated as its violates the Due Process Clauses of the Ohio and United States Constitutions.

III. The Defendant's judgment of conviction does not comply with Crim. R. 32(C), thus there is no final appealable order, in violation of the Due Process Clauses of the Ohio and United States Constitutions.

*See* Public Docket for *State v. Camara*, Ohio Supreme Court Case No. 2015-1702 at Amended Memorandum in Support of Jurisdiction, filed October 29, 2015.

The Ohio Supreme Court declined jurisdiction on January 20, 2016. (Doc. No. 5-1, Exh. 9.)

**E.** *Nunc Pro Tunc* **Sentencing Entries (2014)**

On June 23, 2014, the state trial court issued a "Nunc Pro Tunc Judgment Entry" in Case No. CR0200401890. (Doc. No. 5-1, Exh. 3 at Page ID# 117). The opening paragraph of this Entry states as follows:

**Nunc Pro Tunc Judgment Entry** correcting the entry below to reflect **"The Court finds on July 15, 2004, defendant entered a plea of guilty pursuant to North Carolina v. Alford and was found guilty by the Court** of the offense of Robbery, count 2, in violation of R.C. 2911.02(A)(2), a felony of the 2nd degree; **Defendant entered a plea of Guilty and was found guilty by the Court** of the offense of Aggravated Burglary, count 4, a violation of R.C. 2911.11(A)(1), a felony of the 1st degree; and **defendant entered a plea of Guilty and was found guilty by the Court** of the offense of Aggravated Burglary, count 5, a violation of R.C. 2911.11(A)(1), a felony of the 1st degree; and to reflect **notice of Post Release Control to Defendant.**

7

(*Id*.) (emphasis in original). The Nunc Pro Tunc Judgment Entry also includes the following additional language that was not contained in any of the previous sentencing entries:

> **It is further ORDERED the defendant is subject to 3 years mandatory post-release control as to count 2, 5 years mandatory post-release control as to count 4, 5 years mandatory post-release control as to count 5, after the defendant's release from imprisonment pursuant to R.C. 2967.28 and 2929.14.**
>
> **Defendant given notice of appellate rights under R.C. 2953.08. Defendant notified of 3 years mandatory post-release control as to count 2, 5 years mandatory post-release control as to count 4, 5 years mandatory post-release control as to count 5.**
>
> **Defendant notified that if post release control conditions are violated the adult parole authority or parole board may impose a more restrictive or longer control sanction or return a defendant to prison for up to nine months for each violation, up to a maximum of 50% of the stated term originally imposed. Defendant further notified that if the violation of post release control conditions is a new felony, a defendant may be both returned to prison for the greater of one year or the time remaining on post-release control, plus receive a prison term for the new felony.**

(*Id*.) (emphasis in original). The state trial court issued a similar "Nunc Pro Tunc Judgment Entry" in Case No. CR0200401972 on June 23, 2014. (Doc. No. 5-1, Exh. 4 at Page ID# 129-131.)

**F.  Federal Habeas Petition**

On February 14, 2016,[4] Camara filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**: The Defendant's indictments are fatally defective because they allege multiple, identical, and undifferentiated counts in violation of the Double Jeopardy and Due Process clauses of the Ohio and United States Constitutions.

---

[4] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until March 28, 2016, Camara states that he placed it in the prison mailing system on February 14, 2016. (Doc. No. 1 at 15.) Thus, the Court will consider the Petition as filed on February 14, 2016.

>    **GROUND TWO**: The Defendant's term of post-release control for Case Numbers 02-CR-204 and 02-CR-262 was contrary to law, thus the 892 day term of imprisonment imposed for violation of said post-release control is void and must be vacated as its violates the Due Process Clauses of the Ohio and United States Constitutions.
>
>    **GROUND THREE**: The Defendant's judgment of conviction does not comply with Crim. R. 32(C), thus there is no final appealable order, in violation of the Due Process Clauses of the Ohio and United States Constitutions.
>
>    **GROUND FOUR:** The Defendant received ineffective assistance of counsel at trial, in violation of his Sixth and Fourteenth Amendment rights under the Constitution of the United States, as well as comparable provisions under the Ohio Constitution.

(Doc. No. 1.)

On August 15, 2016, Respondent filed a Motion to Dismiss the Petition as time-barred. (Doc. No. 5.) Camara filed a brief in opposition on September 12, 2016 (Doc. No. 6), to which Respondent did not reply.

## II. Motion to Dismiss

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326–27, 337 (1997). The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such

>State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

In his Motion to Dismiss, Respondent argues Camara's judgment and conviction became "final" for purposes of §2244(d)(1)(A) on September 1, 2004, upon the expiration of the 30 day period in which to seek a direct appeal from his August 2, 2004 sentencing under Ohio App. R. 4. (Doc. No. 5 at 7.) Respondent maintains the AEDPA statute of limitations began running the following day, on September 2, 2004, and ran uninterrupted until it expired on September 2, 2005. (*Id*. at 7-8.) Respondent asserts Camara is not entitled to equitable tolling and, further, that he has failed to set forth a "viable actual innocence" argument sufficient to excuse his untimely petition. Thus, Respondent maintains Camara's February 14, 2016 Petition should be dismissed as untimely because it was filed over ten years after the limitations period expired on September 2, 2005.

Respondent does not address, at any point in his motion, whether the June 2014 "Nunc Pro Tunc Judgment Entries" entered by the state trial court in Case Nos. CR0200401890 and CR0200401972 restarted the AEDPA one year statute of limitations period under § 2244(d)(1)(A). This is significant because, if these Nunc Pro Tunc Judgment Entries are considered "new judgments" for statute of limitations purposes, Camara's convictions and sentences arguably would

10

not have become "final" pursuant to § 2244(d)(1)(A) until April 19, 2016; i.e., ninety (90) days after the Supreme Court of Ohio declined jurisdiction over Camara's appeal and the time period for seeking a petition for writ of *certiorari* in the United States Supreme Court expired. Thus, *if* the June 2014 Nunc Pro Tunc Judgment Entries restarted the limitations period, Camara's February 14, 2016 Petition could be considered timely.

The Sixth Circuit's recent decision in *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016) is highly relevant to this question. In *Crangle*, the Sixth Circuit held that a state trial court's nunc pro tunc correction of a judgment of conviction, which imposed mandatory post-release sanctions in addition to previously imposed penalties, amounted to a new judgment that reset the statute of limitations clock under AEDPA. The court reasoned that "because '[t]he sentence is the judgment,' *Burton v. Stewart*, 549 U.S. 147, 156, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007) (quotation omitted), a new sentence not only permits a challenge to either the new sentence or the undisturbed conviction, but also restarts AEDPA's one-year window to challenge that judgment." *Crangle*, 838 F.3d at 678.

The Sixth Circuit noted, however, the distinction between a limited resentencing that benefits a defendant (such as a sentence reduction) and a "new, worse-than-before-sentence." *Id*. Only the latter, the Court suggested, "amounts to a new judgment" for statute of limitations purposes. *Id*. In Crangle's case, the Sixth Circuit determined the "nunc pro tunc" sentencing order constituted a "new, worse-than-before-sentence" because it imposed post-release control supervision as opposed to the originally imposed "straight parole." The Court then explained that, for several reasons, post-release control supervision "materially increases the potential restrictions on Crangle's liberty," more so than the imposition of "straight parole." *Id*. at 679-680. The Sixth Circuit also rejected the State's argument that Crangle's new sentencing order was not a "new judgment" because it was

11

labeled a "nunc pro tunc" order:

> The phrase "nunc pro tunc" means "now for then" and "refers to situations in which the court's records do not accurately reflect its actions." *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995) (citation omitted). Nunc pro tunc orders are customarily used only "to correct erroneous records," not to "revise the substance of what transpired or to backdate events." *Id*. If the November 2010 nunc pro tunc order merely corrected a record to accurately reflect the court's actions, it would not be a new sentence that resets the statute of limitations under § 2244(d)(1)(A).
>
> But that's not what happened here. At sentencing, the trial court told Crangle that he would not be subject to post-release control and entered judgment accordingly. The later nunc pro tunc order walked back the trial court's statement, imposed post-release control, and reworded Crangle's sentence. That is not merely the correction of a clerical error. No matter the label, the November 2010 order changed the substance of his sentence—and thus amounted to a new judgment. A state court's decision to affix the label nunc pro tunc to an order does not control the federal questions whether the order changes his conditions of confinement.
>
> Because the November 19, 2010 nunc pro tunc order created a new sentence, it was a new judgment that reset the one-year statute of limitations to file a habeas corpus petition. Under 28 U.S.C. § 2244(d)(2), the statute of limitations was tolled from the date Crangle received notice of the nunc pro tunc order to the date when he received notice of the Ohio Supreme Court's decision to deny leave to appeal. The Ohio Supreme Court denied leave to appeal on April 4, 2012 and Crangle placed his federal habeas petition in the prison mailing system on March 28, 2013—that is, within one year. His petition was therefore timely.

*Id*. at 680.

*Crangle* appears to be a significant development in the line of cases addressing the AEDPA statute of limitations in the context of re-sentencing. Respondent, however, has not addressed its effect on the limitations issue raised in the present case.[5] Indeed, Respondent does not meaningfully discuss any of the various nunc pro tunc sentencing entries in this matter, merely stating without

---

[5] *Crangle* was decided on September 22, 2016, which was after Respondent submitted his motion to dismiss. Nonetheless, the Court reminds Counsel for Respondent of her continuing obligation to advise the Court of material changes in the relevant law.

explanation that "there have seen several *sua sponte* nunc pro tunc entries entered for these convictions." (Doc. No. 5 at 4, fn. 4.) Moreover, Respondent failed to include many relevant state court filings in the habeas record before this Court, including (most notably) the change of plea hearing transcript and the August 2004 sentencing hearing transcript. While there may be an argument that *Crangle* is distinguishable from the instant case,[6] the Court is unwilling to make an independent determination of this issue in the absence of a more thorough discussion of the procedural history of the case and a full and complete habeas record.

Therefore, Respondent's motion to dismiss is DENIED WITHOUT PREJUDICE subject to refiling the arguments presented therein in the Return of Writ. In the Return, Respondent may reassert his limitations defense addressing *Crangle, Burton*, and related case law, and the impact of that case law on the limitations issue in the instant case. Respondent shall also address all arguments relative to the grounds raised in the Petition, including any applicable arguments regarding exhaustion and/or procedural default, and the merits of Camara's claims. Finally, Respondent is ordered to supplement the habeas record to include all relevant state court records,

---

[6] As noted above, in *Crangle*, the Sixth Circuit considered the new sentencing entry to be a "new judgment" because it "changed the substance of [Crangle's] sentence;" i.e. the new entry imposed post-release control sanctions that were not originally imposed during sentencing. Here, Camara signed "Notices" in both of his underlying criminal cases indicating he had been advised of the possibility of post-release control sanctions prior to sentencing. However, neither of these Notices appear to contain any information about the potential duration of Camara's post-release control supervision. Based on the record currently before this Court, it appears the state trial court did not expressly order that Camara was subject to three years mandatory post-release control as to Count 2, and five years mandatory post-release control as to Counts 4 and 5, until the issuance of the June 2014 "Nunc Pro Tunc Judgment Entries" in Case Nos. CR0200401890 and 0200401972. The Court cannot determine, however, whether this issue was discussed or, if so, in what degree of detail at the change of plea or sentencing hearings because Respondent failed to include those transcripts in the habeas record.

including any and all nunc pro tunc sentencing entries, the change of plea hearing transcript, and the August 2004 sentencing hearing transcript.

**Respondent shall file his Return within 30 days of the date of this Order; i.e., by or on Friday, January 27, 2017. Camara shall file his Traverse within 30 days of the filing of the Return.**

### VI. Conclusion

For the following reasons, Respondent's Motion to Dismiss as time-barred is denied without prejudice, subject to refiling as set forth above.

IT IS SO ORDERED.

Date: December 22, 2016               *s/ Jonathan Greenberg*
                                      Jonathan D. Greenberg
                                      United States Magistrate Judge