IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT CAMARA, | ) | CASE NO. 3:16 CV 756 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| JAMES HAVILAND, Warden, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

### INTRODUCTION

Petitioner Robert Camara, a prisoner in state custody, has filed in this Court a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentences in *State v. Camara*, Case Nos. CR-2004-1890 and CR-2004-1972. (Doc. No. 1.)  Respondent James Haviland[1] has filed a return of writ. (Doc. No. 8.)  And Petitioner has filed a traverse. (Doc. No. 9.)

This matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Camara's petition or other case-dispositive motions.[2]  For the reasons stated below, the Court recommends Camara's petition be DISMISSED.

---

[1] James Haviland is warden of the Allen Correctional Institution, where Camara is incarcerated. (Doc. No. 8 at 1.)

[2] This case was transferred to the undersigned from Magistrate Judge Nancy A. Vecchiarelli upon her retirement.

PROCEDURAL BACKGROUND

A.      Trial Court

In April 2004, the Lucas County Grand Jury indicted Camara in Case No. CR-02004-1890 ("Case No. 1890") on three counts of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1)/(3), one of which carried a firearm specification; one count of robbery in violation of Ohio Rev. Code § 2911.02(A)(2); two counts of aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(1); one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1); and one count of receiving stolen properly in violation of Ohio Rev. Code § 2913.51.  (Doc. No. 8-1, Exh. 1.)  Soon after, the same grand jury indicted Camara in Case No. CR-2004-1972 ("Case No. 1972") for another count of robbery in violation of Ohio Rev. Code § 2911.02(A)(2).  (Doc. No. 8-1, Exh. 2.)  Camara entered pleas of not guilty to all charges in both cases.  (*See* Doc. No. 8-1, Exh. 11 at 2.)

On July 15, 2004, Camara entered into a negotiated plea agreement.  (*See* Doc. No. 8-1, Exh. 11 at 2.)  In Case No. 1890, he agreed to withdraw his pleas of not guilty and enter pleas of guilty to reduced charges of two counts of aggravated burglary.  (Doc. No. 8-1, Exh. 3.)  He also agreed in that case to enter a guilty plea to robbery through an *Alford* plea.[3]  (Doc. No. 8-1, Exh. 4.)  The State dismissed the remaining charges and firearm specification.  (Doc. No. 8-1, Exhs. 3, 4.)  In Case No. 1972, Camara withdrew his not-guilty plea and through an *Alford* plea, entered a plea of guilty to the robbery charge.  (Doc. No. 8-1, Exh. 5.)

---

[3] An *Alford* plea is a guilty plea that a defendant enters as a part of a plea bargain without admitting guilt.  *See North Carolina v. Alford*, 400 U.S. 25 (1970).

2

On both the guilty and *Alford* plea forms, which Camara signed, Camara represented that he understood that if he was:

> sentenced to prison for a felony 1 . . . , after my prison release I will have 5 years of post release control under conditions determined by the parole board.  If I am sentenced to prison for a felony 2 or a felony 3 which involved causing or threatening physical harm, I will have a mandatory post release control of 3 years.  If I receive prison for a felony 3, 4, or 5, I may be given up to 3 years of post-release control. If I violate conditions of supervision while under post release control, the parole board could return me to prison for up to nine months for each violation, for a total of 50% of my originally stated term.  If the violation is a new felony, I could receive the greater of one year or the time remaining on post release control plus a prison term for the new crime.

(Doc. No. 8-1, Exhs. 3, 4, 5.)  In addition, the trial court questioned him on the record about his understanding of his pleas and sentences, including post-release control.  (*See* Doc. No. 8-2, Exh. 29 at 10-11.)

On August 2, 2004, the court conducted a sentencing hearing, at which it sentenced Camara in Case No. 1890 to seven years' imprisonment for the robbery charge and nine years' imprisonment for each of the aggravated burglary charges, for a total term of twenty-five years' imprisonment.  (Doc. No. 8-1, Exh. 6.)  It sentenced Camara in Case No. 1972 to a term of five years' imprisonment for the robbery charge.  (Doc. No. 8-1, Exh. 7.)  The sentences in the two cases were to be served consecutively to each other, for a total of thirty years in prison.  (Doc. No. 8-1, Exhs. 6, 7.)

The sentences also were to be served consecutively to a third sentence of 892 days' imprisonment imposed in an unrelated 2002 case from Marion County, Ohio (the "2002 Case"), for a violation of post-release control.  (Doc. No. 8-1, Exhs. 6, 7.)  The trial court's judgment entries in both Case No. 1890 and Case No. 1972 stated:

3

The Court finds that in Marion County, Ohio, case no. 02-CR-204, the defendant has been convicted of Escape and Marion County, Ohio, case no. 02-CR-262 the defendant has been convicted of Aggravated Assault and sentenced to the Ohio Department of Rehabilitation and Correction.  The Court further finds that after serving his stated prison teerm in Marion County, Ohio, case no. 02-CR-204 and case no. 02-CR-262 the defendant was released on Post Release Control.  While under Post Release Control in Marion County, Ohio, case no. 02-CR-204 and case no. 02-CR-262, the defendant committed and has now been convicted of Robbery, a felony of the 2nd degree, in Lucas County, Ohio Case no. CR2004-1972 and Robbery, a felony of the 2nd degree, Aggravated Burglary, a felony of the 1st degree, and Aggravated Burglary, a felony of the 1st degree, in Lucas County, Ohio, Case no. CR2004-1890.  Pursuant to O.R.C. 2967.28(F)(4), the Court finds that the defendant is in violation of Post Release Control by committing the felonies in Lucas County, Ohio, case no. CR2004-1972 and case no. CR2004-1890 and therefore imposes a prison term of 892 days in prison for Marion County, Ohio, case no. 02-CR-204 and case no. 02-CR-262.  The Court further finds that the prison term imposed for the violation of Post Release Control in Marion County, Ohio, case no. 02-CR-204 and case no. 02-CR-262 shall be served consecutively to the prison term imposed for the new felonies committed in Lucas County, Ohio, case no. CR2004-1972 and CR2004-1890.

(Doc. No. 8-1, Exhs. 6, 7.)

Also that day, the trial court filed in both cases a "Notice" regarding Camara's post-release control sentence, stating:

A term of post-release control after prison will be imposed following prison release for an F1 or F2 . . .; otherwise post-release control may be imposed. For violating post release control conditions, the adult parole authority or parole board may impose a more restrictive or longer control sanction, including a nine month prison term for each violation, up to a maximum of 50% of the stated term originally imposed. If the violation is a new felony, defendant may be returned to prison for the greater of one year or the time remaining on post-release control in addition to prison upon conviction of the new felony.

(Doc. No. 8-1, Exhs. 8, 9.)  Camara and his counsel signed the notices, certifying that Camara had read and understood them.  (Doc. No. 8-1, Exhs. 8, 9.)

4

In addition, the trial court questioned Camara at the sentencing hearing about whether he had read, understood, and signed the post-control release sentence notifications, and Camara stated that he had and had no questions for the court. (*See* Doc. No. 8-2, Exh. 30 at 8-9.)

**B.     Direct Appeal**

A review of the state appellate court's docket indicates Camara did not seek direct review of these convictions and sentences.

**C.     Post-Conviction Proceedings**

**1.     First post-conviction petition**

On June 15, 2006, Camara, acting *pro se*, filed an untimely petition to vacate or set aside his robbery and aggravated burglary convictions in both Case No. 1890 and Case No. 1972. (Doc. No. 8-1, Exh. 10.) He raised the following three grounds for relief:

1.    [Fifth] Amendment [v]iolation is a [c]onstitutional [r]ight to [n]ot [i]ncriminate myself.

      Short statement of facts supporting the claim: Attorney cohearsed [*sic*] a guilty plea.

2.    [Sixth] Amendment [v]iolation to a fair trial and effective assistance of counsel.

      Short statement of facts supporting the claim: Attorney cohearsed [*sic*] a guilty plea in violation of [C]ode of [P]rofessional [R]esponsibility "EC 7-13" and ethical rule violations "DR1-102(A)(5)" by pretrial prejudice of failing to investigate and preparing for a fair trial when witness testimony and co-defendant testimony never met the burden of proof requirements confirming substantial justice was not done.

3.    [Fourteenth] Amendment of [a]typical hardship is a violation of my constitution[al] rights.

      Short statement of facts supporting the claim: Counsels [*sic*] conduct undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result.

5

(Doc. No. 8-1, Exh. 10.)

On January 12, 2007, the trial court found Camara's petition untimely and alternatively barred on the basis of Ohio's *res judicata* rule.  (Doc. No. 8-1, Exh. 11 at 7-10.)  A review of the state appellate court's docket shows that Camara did not appeal that judgment.

### 2. 2007 *nunc pro tunc* orders

On July 31, 2007, the trial court *sua sponte* issued *nunc pro tunc*[4] orders in both Case No. 1890 and Case No. 1972.  (Doc. No. 8-1, Exhs. 12, 13.)  The orders stated their purpose was to "correct[] the sentencing entry to reflect the Defendant [had] been given notice of appellate rights under R.C. 2953.08 and post release control notice under R.C. 2929.19(B)(3) and R.C. 2967.28."  The *nunc pro tunc* judgment entries did not alter Camara's sentences.  (*See* Doc. No. 8-1, Exhs. 12, 13.)

### 3. Second post-conviction petition

Nearly seven years later, on March 27, 2014, Camara filed a second *pro se* post-conviction petition.  In it, he asserted the following claims:

1. The Defendant's indictments are fatally defective because they allege multiple, identical, and undifferentiated counts in violation of the Double Jeopardy and Due Process Clauses of the Ohio and United States Constitutions.

2. The Defendant's term of post-release control for case numbers 02-CR-204 and 02-CR-262 was contrary to law, thus the 892[-]day term of imprisonment imposed for violation of said post-release control is void and must be vacated as it violates the Due Process Clauses of the Ohio and United States Constitutions.

---

[4] The phrase "*nunc pro tunc*" means "now for then," and *nunc pro tunc* orders "are customarily used only 'to correct erroneous records,' not to 'revise the substance of what transpired or to backdate events.'"  *Crangle v. Kelly*, 838 F.3d 673, 680 (6th Cir. 2016) (quoting *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995)).

3.      The Defendant's judgment of conviction does not comply with Crim. R. 32(C), thus there is no final appealable order, in violation of the Due Pro cess Clauses of the Ohio and United States Constitutions.

4.      The Defendant received ineffective assistance of counsel at trial, in violation of his Sixth and Fourteenth Amendment rights under the Constitution of the United State[s], as well as comparable provisions under the Ohio Constitution.

(Doc. No. 8-1, Exh. 14 (capitalization altered).)  The trial court denied the petition on June 24, 2014, as untimely filed and, alternatively, meritless and/or barred by *res judicata*.  (Doc. No. 8-1, Exh. 15.)

Camara filed a timely *pro se* notice of appeal to the state appellate court.  (Doc. No. 8-1, Exh. 16 at 3.)  He raised the same claims as assignments of error that he had raised to the trial court.  (Doc. No. 8-1, Exh. 16.)  The court of appeals affirmed the trial court's judgment on September 18, 2015.  (Doc. No. 8-1, Exh. 16.)

Camara filed a *pro se* notice of appeal to the Ohio Supreme Court.  (Doc. No. 8-1, Exh. 17.)  In his memorandum in support of jurisdiction, he raised the identical four claims as propositions of law.  (Doc. No. 8-2, Exh. 18.)  On January 20, 2016, the Ohio Supreme Court declined jurisdiction over the appeal.  (Doc. No. 8-2, Exh. 19.)

### 4.      2014 *nunc pro tunc* orders

Meanwhile, on June 23, 2014, the trial court again *sua sponte* issued *nunc pro tunc* sentencing entries in Case No. 1890 and Case No. 1972, this time to comply with Rule 32(C) of the Ohio Rules of Criminal Procedure by stating the manner of Camara's conviction   namely, by plea.  (Doc. No. 8-2, Exhs. 20, 21.)  The orders also restated Camara's sentences without changing them in any respect.  (*See* Doc. No. 8-2, Exhs. 20, 21.)

7

## FEDERAL HABEAS CORPUS

Camara filed his *pro se* petition for writ of habeas corpus in this Court on March 28,

2016. (Doc. No. 1.) The petition asserts the following four grounds for relief:

> 1. The Defendant's indictments are fatally defective because they allege multiple, identical, and undifferentiated counts in violation of the Double Jeopardy and Due Process Clauses of the Ohio and United States Constitutions.
>
> 2. The Defendant's term of post-release control for case numbers 02-CR-204 and 02-CR-262 was contrary to law, thus the 892[-]day term of imprisonment imposed for violation of said post-release control is void and must be vacated as it violates the Due Process Clauses of the Ohio and United States Constitutions.
>
> 3. The Defendant's judgment of conviction does not comply with Crim. R. 32(C), thus there is no final appealable order, in violation of the Due Process Clauses of the Ohio and United States Constitutions.
>
> 4. The Defendant received ineffective assistance of counsel at trial, in violation of his Sixth and Fourteenth Amendment rights under the Constitution of the United State[s], as well as comparable provisions under the Ohio Constitution.

(Doc. No. 1-1 at 4, 10, 17, 19 (capitalization altered).)

On August 15, 2016, Respondent moved to dismiss the petition on summary judgment,

arguing that it was time-barred. (Doc. No. 5.) Camara opposed the motion. (Doc. No. 6.) On

December 22, 2016, the undersigned denied the motion. (Doc. No. 7.)

Respondent filed a return of writ on January 27, 2017. (Doc. No. 8.) Camara filed his

traverse on February 21, 2017. (Doc. No. 9.)

8

## ANALYSIS

Respondent first argues that Camara's habeas corpus petition is time-barred by the statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  (Doc. No. 8 at 7-16.)  The undersigned agrees.

### A.    The AEDPA Statute of Limitations

Under AEDPA, a state prisoner must file a habeas corpus petition within one year from the latest of four circumstances:

> (A)    the date on which the [state-court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,
>
> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Respondent contends that Camara's limitations period was triggered on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . ." under § 2244(d)(1)(A), but he did not file a timely petition within the prescribed one-year period.  (Doc. No. 8 at 8.)

The trial court sentenced Camara in both Case No. 1890 and Case No. 1972 on August 2, 2004, and the court's sentencing judgments were journalized that same day.  (Doc. No. 8-1, Exhs. 6, 7, 30.)  Under Ohio law, he had thirty days from the date of the journal entry of

9

sentencing within which to file his direct appeal.  Ohio R. App. P. 4(A); Ohio R. Crim. P. 32(C);

*State v. Baker*, 119 Ohio St. 3d 197, 199 (Ohio 2008) ("Journalization of the judgment of

conviction pursuant to Crim. R. 32(C) starts the 30-day appellate clock ticking.").  Camara did

not file a direct appeal, so his conviction became final on September 1, 2004.

Accordingly, pursuant to 28 U.S.C. § 2244(d)(1)(A), the statute of limitations on

Camara's federal habeas petition began to run the following day, September 2, 2004.  *See* Fed. R.

Civ. P. 6(a)(1) ("In computing any time period . . . exclude the day of the event that triggers the

period."); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) (applying Rule 6(a) standards to

computation of time for § 2244(d) statute of limitations purposes).  Because Camara did not

challenge his convictions or sentences in any form in state court during the following year, the

AEDPA statute of limitations expired one year later, on September 2, 2005.[5]

Camara, however, did not file his federal habeas petition until March 28, 2016 — more

than ten years after the AEDPA deadline.

B.      **AEDPA Statutory Tolling**

AEDPA allows for statutory tolling, which, under proper circumstances, will extend the

one-year statute of limitations.  Camara asserts two separate grounds for statutory tolling.

1.      **§ 2244(d)(1)(D)**

Camara argues that the limitations period on his federal habeas petition did not begin to

run until "the date on which the factual predicate of the claim or claims presented could have

---

[5] Camara argues that the "issues raised [in his habeas petition] are void judgment and void
sentence, to which a limitation period does not apply . . . ."  (Doc. No. 1 at 13.)  But he provides no
legal analysis or authority for this proposition, and the argument is not well-taken.  An allegation that
a state-court judgment is void does not affect the AEDPA statute of limitations.

10

been discovered through the exercise of due diligence" under § 2244(d)(1)(D)   in his case, the date the trial court issued the *nunc pro tunc* sentencing entries.  (Doc. No. 1-1 at 2.)

       As Respondent maintains, however, this provision does not apply, because Camara was aware of all facts underlying his federal habeas claims at the time of his 2004 judgment and sentencing, and the later corrective orders did not alter those facts in any respect.  (Doc. No. 8 at 8.)  Camara's first claim, challenging the indictment, clearly is based solely on facts contained in the trial-court record when he was convicted and not affected by the later corrective sentencing entries.  (*See* Doc. No. 1-1 at 5-10.)  His second claim contests the 2002 post-release control sentence (*see* Doc. No. 1-1 at 10-16), which was clearly stated in the original 2004 sentencing judgment and restated verbatim in the 2007 and 2014 *nunc pro tunc* entries.  His third claim attacks the original 2004 judgments of conviction as void for failing to comply with Ohio Criminal Procedure Rule 32(C) as the rule was written at the time the judgment entries were filed.  (*See* Doc. No. 1-1 at 17-19.)  Camara, therefore, had notice of this record-based claim at the time of the 2004 judgment.  Moreover, although the 2014 *nunc pro tunc* orders corrected the procedural defect Camara identifies, they did not constitute a new final appealable order under Ohio law.  *See State v. Lester*, 130 Ohio St. 3d 303, paragraph two of the syllabus (Ohio 2011).  Finally, as Camara's fourth claim of ineffective assistance of trial counsel is based on his first two claims (*see* Doc. No. 1-1 at 19-20), it also is predicated on facts in the record at the time of his original 2004 judgment and sentencing.

       This Court finds, therefore, that the state trial court's corrective *nunc pro tunc* orders in 2007 and 2014 did not constitute or disclose new facts upon which Camara's federal habeas

claims are based, and Camara is not entitled to statutory tolling of the AEDPA limitations period under § 2244(d)(1)(D).

**2.    § 2244(d)(2)**

Camara also argues that his petition is timely under AEPDA's § 2244(d)(2) because he filed it within one year from the last decision of the Ohio Supreme Court in his case, which was issued on January 20, 2016.  (Doc. No. 1 at 13.)  In that judgment, Ohio's high court declined jurisdiction over the appellate court's affirmance of the trial court's denial of his second post-conviction petition.  (Doc. No. 8-2, Exh. 19.)

Under § 2244(d)(2), the time during which a properly filed application for state post-conviction or other collateral relief is pending is not counted against AEDPA's one-year statute of limitations.  28 U.S.C. § 2244(d)(2).  But the state-court petitions and applications must be both "pending" and "properly filed" in order to stay the limitations period.  *Id*.  The proceedings must be pending because the provision "does not . . . 'revive' the limitations period (*i.e*., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Winkfield v. Bagley*, 66 Fed. Appx. 578, 581 (6th Cir. 2003).  In addition, untimely motions are not "properly filed" and will not stop the one-year clock.  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  This is so even where there are exceptions to a state timely-filing requirement, such as Ohio Appellate Rule 26(B)'s "good cause" exception to its filing deadline for reopening applications.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005).  Thus, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."  *Id*. at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).

Camara filed two state post-conviction petitions, neither of which were "pending" during the limitations period on his federal habeas petition or "properly filed." Camara filed both petitions well after the limitations period on his federal habeas petition expired on September 2, 2005 (he filed his first post-conviction petition in June 2006 and his second in March 2014). (*See* Doc. No. 8-1, Exhs. 10, 14.) And the state courts found both petitions were not filed within the time prescribed under Ohio's court rules. (*See* Doc. No. 8-1, Exhs. 11, 16.) The Court finds Camara's state post-conviction proceedings, therefore, did not toll his AEDPA limitations period under § 2244(d)(2).

### C.   *Crangle v. Kelly*:  *Nunc Pro Tunc* Orders as New Judgments for Purposes of AEDPA Statute of Limitations

Camara's habeas petition also may be timely if the 2007 and 2014 *nunc pro tunc* sentencing orders constitute "new judgments" that restarted the AEDPA statute of limitations altogether under § 2244(d)(1)(A).

In *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016), a defendant challenged a mandatory five-year post-release control sentence imposed in a state trial court's *nunc pro tunc* correction of a judgment of conviction, when the defendant's plea agreement had stated the term of post-release control would be discretionary and the trial court told him at the sentencing hearing that he would be subject to "straight parole" and not post-release control. *Id*. at 675-76. The Sixth Circuit held because the *nunc pro tunc* order created a new sentence, it was a new judgment that reset the AEDPA statute of limitations clock. *Id*. at 680. The court explained that "because '[t]he sentence is the judgment,' . . . a new sentence not only permits a challenge to either the new sentence or the undisturbed conviction, but also restarts AEDPA's one-year window to

13

challenge that judgment." *Id*. at 678 (quoting *Burton v. Stewart*, 549 U.S. 147, 156 (2007)). It distinguished a limited resentencing that benefits a defendant, such as a sentence reduction, from a "new, worse-than-before-sentence" that "amounts to a new judgment." *Id*. And the court concluded that the post-release control sentence imposed by the corrective order in that case was new and worse because it "materially increas[ed] the potential restrictions on [the defendant's] liberty[,]" with a mandatory sanction and possible future imprisonment. *Id*. at 679.

*Crangle* does not apply here. As Respondent argues, the 2007 and 2014 *nunc pro tunc* orders did not alter his sentencing or impose a new sentence upon Camara. Instead, the orders "merely corrected a record to accurately reflect the court's actions," namely, its repeated notice to Camara of the terms of his post-release control sentences. *Id*. The trial court ensured that Camara fully understood the post-release control sentences imposed in the 2004 cases at the time of his original sentencing in 2004. The terms of those sentences were clearly stated in his plea agreements and notices of post-release control, which he signed, and the trial court explained the sentences to him at his sentencing hearing on the record. Camara's 2002 post-release control sentence was clearly stated in the 2004 judgment entry itself and restated verbatim in the 2007 and 2014 *nunc pro tunc* orders.

Camara states in his traverse that "notwithstanding Petitioner answering in the affirmative" when the trial court asked him if he read and understood the terms of the post-release control notices, "it is evident that the conditions were never explained to him." (Doc. No. 9 at 3.) But the record belies that claim. At his plea hearing, the following colloquy between the trial judge and Camara took place:

The Court:     How far have you gone in school?

14

| | |
|---|---|
| Mr. Camara: | Graduated. |
| The Court: | Can you read, write, and understand the English language? |
| Mr. Camara: | Yes, ma'am. |
| The Court: | Now, Mr. Camara, is it your understanding you're entering pleas of guilty pursuant to Alford v. North Carolina to two counts of robbery, and you're pleading guilty to two counts of aggravated burglary? |
| Mr. Camara: | Yes, ma'am. |
| The Court: | Are you presently on probation, parole, post release control or community control for any other offense? |
| Mr. Camara: | Post release control. |
| The Court: | And what is that for? |
| Mr. Camara: | Assault and escape. |
| The Court: | Do you understand that by being on post release control that by committing new felonies while under post release control that you shall, and we're going to have a hearing at the time of this sentencing, is this Court shall impose an additional term and it will be either one year or the time remaining on post release control, whichever is greater.  And that time is whichever is greater.  And that time is determined by when these new felonies were committed, and that must be served consecutively.  Consecutively means you'll serve out your post release control time with no credit toward this sentence that this Court would impose.  Do you understand that? |
| Mr. Camara: | Yes, ma'am. |

(Doc. No. 8-2, Exh. 29 at 10-11.)  At Camara's sentencing hearing, the trial judge confirmed

with Camara that he understood his sentences, including post-release control, in this exchange:

| | |
|---|---|
| The Court: | Now, I have been handed a note pursuant to 2929.19(B)(3) in Case Number 04-1890 and 01-1972 [notice regarding post-release control] in which I see your signatures on the front and the back of the forms. . . .  And also the acknowledgments pursuant to 2947.23 |

[regarding imposition of court costs].  These are your signatures on these documents?

Mr. Camara:    Yes, ma'am.

The Court:    Did you read these documents carefully before you signed them?

Mr. Camara:    Yes, ma'am.

The Court:    Do you have any questions concerning prison and nonprison sanctions?

Mr. Camara:    No, ma'am.

The Court:    When we had the plea proceedings I talked to you in great detail about the exposure that you're facing, and in summary the maximum stated prison terms are 28 years in the penitentiary, add another 14 years on top of that for violations of post release control.  Just one moment.  That's 42 years in the penitentiary. And another 5 years on top of that for post release control sanction. That's 47 years in the penitentiary, and that's in addition to the 892 days that you shall have imposed against you today consecutively served with that time.  Do you remember all of that?

Mr. Camara:    Yes, ma'am.

The Court:    And knowing that do you maintain your pleas of guilty?

Mr. Camara:    Yes, ma'am.

(Doc. No. 8-2, Exh. 30 at 8-9.)  It is clear from the record that the trial court carefully inquired into Camara's understanding of his post-release control sentence and that Camara affirmed that he understood.

Thus, the state trial court's 2007 and 2014 *nunc pro tunc* orders did not impose a new sentence on Camara and therefore did not constitute new judgments under *Crangle* that would restart the AEDPA statute of limitations on his federal habeas petition.

16

###### D.    Equitable Tolling of the AEDPA Statute of Limitations

AEDPA's statute of limitations also is subject to equitable tolling in appropriate cases.

*Holland v. Florida*, 560 U.S. 631, 645 (2010).  Equitable tolling "allows courts to toll a statute of

limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from

circumstances beyond that litigant's control."  *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir.

2010) (internal quotation marks omitted).  "[A]lthough 'the party asserting statute of limitations

as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner

bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling."

*Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th

Cir. 2002)).  To do so, the petitioner must show that (1) "he has been pursuing his rights

diligently," and (2) that "some extraordinary circumstance stood in his way and prevented timely

filing."  *Holland*, 560 U.S. at 649.

As Respondent points out, Camara has not satisfied this burden.  Most significantly, he

did not file anything in this Court until more than ten years after his AEDPA limitations period

began to run.  *See Winkfield v. Bagley*, 66 Fed. Appx. 578, 583 (6th Cir. 2003) ("[I]n order for

equitable tolling to apply, the petitioner must diligently pursue habeas relief.").  He also did not

pursue his state-court remedies in a diligent, timely manner.  He did not seek review on direct

appeal at all, and his two post-conviction petitions were untimely.

Nor has Camara demonstrated that extraordinary circumstances prevented him from filing

his petition on time.  Camara explains that he "is [p]ro se and unschooled and lacks procedural

understanding as well as substantive understanding of the law.  Under such circumstances it is a

virtual impossibility to assert or even realize the existence of legitimate claims that affect one's

17

Constitutional rights within a specific and limited window of time."  (Doc. No. 9 at 2.)  He

further states, without any supporting evidence, that he "did not appeal the sentence and

conviction because he was led to believe that a *guilty plea* barred any type of appeal."  (Doc. No.

9 at 5.)  As Respondent notes, however, the Supreme Court has "never accepted *pro se*

representation alone or procedural ignorance as an excuse for prolonged inattention when a

statute's clear policy calls for promptness . . . ."  *Johnson v. United States*, 544 U.S. 295, 311

(2005).  Camara is not entitled to equitable tolling of the AEDPA statute of limitations.

### D.    Actual Innocence Exception to AEDPA's Limitations Statute

Finally, habeas petitioners may be entitled to an equitable exception to the AEDPA

statute of limitations under the "actual innocence" or "miscarriage of justice" gateway to federal

habeas review set forth in *Schlup v. Delo*, 513 U.S. 298 (1995).  *McQuiggin v. Perkins*, 133 S.

Ct. 1924, 1928 (2013).  "[T]enable actual-innocence gateway pleas are rare," however, as a

petitioner "'must persuade[] the district court that, in light of the new evidence, no juror, acting

reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *Id*. (quoting

*Schlup*, 513 U.S. at 329).  Actual innocence claims require a showing of "new reliable evidence"

and factual innocence, not mere legal insufficiency.  *See Schlup*, 513 U.S. at 324; *Bousley v.*

*United States*, 523 U.S. 614, 623 (1998).

Camara has not offered any new evidence to show he is "actually innocent" of the crimes

for which he was convicted.  The actual innocence exception to AEDPA's limitations statute,

therefore, also does not apply here.

Accordingly, this Court finds Camara's habeas corpus petition is time-barred under

AEDPA's § 2244(d)(1)(A).

### CONCLUSION AND RECOMMENDATION

Petitioner Robert Camara filed his petition for writ of habeas corpus more than ten years after the AEDPA statute of limitations expired.  He is not entitled to statutory tolling and has offered no evidence or argument that he is actually innocent.  Accordingly, the Court recommends Camara's petition be DISMISSED.


Date:   October 6, 2017                              *s/ Jonathan Greenberg*
                                                     Jonathan D. Greenberg
                                                     United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**